# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALYSSA LAUGHMAN, a minor, by ROBERT CAMPBELL, Esquire, court-appointed guardian ad litem, JEAN C. LAUGHMAN, and TILGHMAN LAUGHMAN, : : : : : : **Plaintiffs** : v. : : ACE AMERICAN INSURANCE, : BLACK & VEATCH CORP., : OVERLAND CONTRACTING INC., : THE HARTFORD LIFE AND : ACCIDENT INSURANCE COMPANY, : THE HARTFORD FINANCIAL : SERVICES GROUP, INC., and THE : HARTFORD, : **Defendants** : | CIVIL NO. 1:09-CV-0695 (Judge Conner) |

## MEMORANDUM

Presently before the court is a motion (Doc. 40) to dismiss plaintiffs' amended complaint, filed by defendants Black & Veatch Corporation ("B&V") and Overland Contracting, Incorporated ("Overland"). For the reasons that follow, the motion will be denied.

## I. Factual Background[1]

In 2006, Joseph Laughman ("decedent") was an employee of Overland through its subsidiary, B&V. (See Doc. 37 ¶ 10.) Overland administered multiple employee benefits plans for B&V including a supplemental life insurance plan, an

---

[1] In accordance with the standard of review for a motion to dismiss under Rule 12(b)(1), the court will present the facts as alleged in the complaint, as well as the record of the case and matters of public record. See infra Part II.

accidental death and dismemberment (AD&D) plan, health insurance, and a 401K plan. (See id. ¶¶ 11, 13.) On May 5, 2006, a memorandum was sent to employees informing them that if they were hired prior to May 4, 2006, they were eligible to collect a Basic Group Life Insurance benefit of $10,000 for AD&D coverage and could elect supplemental life insurance coverage of up to $150,000. (See Doc. 1, Ex. A ¶¶ 15-16.) The AD&D plan was underwritten by defendant Ace American Insurance ("Ace") and the life insurance coverage was underwritten by defendants The Hartford Life and Accident Insurance Company, The Hartford Financial Services Group, Inc., and The Hartford (collectively "Hartford"). (Id. ¶¶ 5-7, 17-18.)

Shortly after receiving this memorandum, decedent enrolled in additional life insurance coverage and AD&D coverage through the insurance programs provided by Overland and B&V. (See Doc. 37 ¶ 16.) On June 9, 2006, decedent was killed in a motor vehicle accident. (See id. ¶ 17.) Plaintiffs thereafter employed counsel to assist in ascertaining their rights under decedent's benefits plans. (See id. ¶ 19.) On August 30, 2006, plaintiffs' counsel purportedly began a "letter writing campaign" to Overland attempting to determine: (1) the decedent's rights under the insurance plan; (2) who decedent named as beneficiaries under the insurance policies; and (3) the extent of the decedent's monetary interest in the plans. (See id. ¶¶ 20-21.) Overland allegedly ignored plaintiffs' request for plan documents. (See id. ¶ 22.) Thus, plaintiffs' counsel persisted with similar inquires. In fact, plaintiffs contend that they sent written requests for plan documents to defendants on December 4, 2006, December 6, 2006, December 13, 2006, October 3, 2007, October 25, 2007,

November 30, 2007, January 23, 2008, May 14, 2008, May 22, 2008, and September 10, 2008. (See id. ¶ 54.) Plaintiffs also allege that Jean C. Laughman ("Jean"), decedent's mother, contacted B&V directly and left a voicemail message with the human resources department on January 16, 2007. (See id. ¶ 31.) Plaintiffs further allege that they did not receive any plan documents from defendants as a result of these inquiries, and it was not until June 2, 2008 that B&V first produced relevant plan documents. (See id. ¶ 22.) The remaining plan documents were provided on September 10, 2008—over two years after plaintiffs' initial inquiry. (See id. ¶ 56.)

Litigation was initially commenced on March 19, 2009 in the Court of Common Pleas of Adams County, Pennsylvania. (See Doc. 1, Ex. A at 2-25.) The original complaint alleged that the life insurance policy purchased by decedent through B&V became effective before his death on June 9, 2006, and that plaintiffs were entitled to benefits thereunder. (See Doc. 1, Ex. A at 10-11.) On April 15, 2009, Hartford filed a notice of removal, transferring this case to federal court. (See Doc. 1 at 1.) Overland and B&V filed a motion to dismiss the complaint on April 21, 2009. (See Doc. 6.) Hartford filed a motion to dismiss on April 22, 2009. (See Doc. 9.) On May 1, 2009, Ace also filed a motion to dismiss. (See Doc. 12.) Plaintiffs opposed each of these motions by June 2, 2009. (See Docs. 26, 27, 28.)

The magistrate judge subsequently issued a report on July 16, 2009, recommending that defendants' motions to dismiss be granted but that plaintiffs be permitted to file an amended complaint. (See Doc. 32 at 10.) Objections to the

3

report and recommendation were filed by Overland and B&V on July 29, 2009, (see Docs. 33, 34), and by Hartford on July 29, 2009, (see Doc. 35). On July 30, 2009, Ace filed its own objections to the report and recommendation. (See Doc. 36.)

Before this court was able to review the report, however, plaintiffs filed an amended complaint (Doc. 37) on August 5, 2009 pursuant to Federal Rule of Civil Procedure 15(a)(1).[2] The amended complaint no longer presses plaintiffs' original contention that decedent was entitled to benefits under the May 2006 policies. Instead, the amended pleading contains only one count in which plaintiffs allege that defendants violated 29 U.S.C. § 1132(c), which governs the duty of Employee Retirement Income Security Act ("ERISA") plan administrators to supply requested insurance plan information.[3] In short, plaintiffs argue that defendants triggered ERISA's penalty provision by delaying over two years before providing requested plan documents. Overland and B&V moved (Doc. 40) to dismiss the

---

[2] Federal Rule of Civil Procedure 15(a)(1) provides: "A party may amend its pleading once as a matter of course: (A) before being served with a responsive pleading; or (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar."

[3] Section 1132(c)(1) states, in pertinent part, that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation . . . shall be treated as a separate violation."

4

amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on August 19, 2009. The motion has been fully briefed and is ripe for disposition.[4]

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) therefore challenges the power of a federal court to hear a claim or case. See Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). In the face of a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." Gould Elecs., Inc. V. United States, 220 F.3d 169, 178 (3d Cir. 2000); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

Motions under Rule 12(b)(1) may take one of two forms. A "facial" attack "contest[s] the sufficiency of the pleadings." Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006)). The court assumes the veracity of the allegations in the complaint but must examine the pleadings to ascertain whether they present an

---

[4] As stated above, this court did not review the report and recommendation of the magistrate judge before plaintiffs filed their amended complaint. Through amendment, however, plaintiffs have narrowed the number and scope of the counts presented. Moreover, the amended complaint supercedes the original complaint, rendering moot the motions to dismiss that initial pleading as well as the report of the magistrate judge. See Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) (recognizing that an "amended complaint supercedes the original version"); see also 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476, at 556 (2d ed. 1990).

5

action within the court's jurisdiction. United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). The court should grant such a motion only if it appears with certainty that assertion of jurisdiction would be improper. Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa., 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003); see also Kehr Packages, 926 F.2d at 1408-09. If the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

In contrast, a "factual" attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside of the court's jurisdiction. Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In such circumstances, the court is both authorized and required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. Mortensen, 549 F.2d at 891; see also Atkinson, 473 F.3d at 514. In the motion *sub judice*, defendants present a facial attack against the standing of two of the three plaintiffs to prosecute their ERISA claim; the court will analyze the claims accordingly.

### III. Discussion

The crux of plaintiffs' amended complaint is that they requested plan documents to which they were entitled and which defendants unreasonably

withheld in contravention of § 1132(c) of ERISA. Defendants' primary rejoinder, and the basis of their motion to dismiss (Doc. 40), is that Jean and Tilghman Laughman ("Tilghman"), parents of decedent, lack standing under ERISA to assert a cause of action for penalties because they are neither "participants" or "beneficiaries" as defined by the statute.[5] (See Doc. 41 at 8-12.) Jean and Tilghman contend that at the time they requested plan documents, they had a "colorable claim" to benefits and therefore have standing to assert a cause of action under 29 U.S.C. § 1132(c). (See Doc. 42 at 4-9.) According to plaintiffs, their primary goal during the two years they corresponded with defendants was to determine the extent of their rights under decedent's insurance policies and identify the proper beneficiaries under those policies. (See Doc. 37 ¶ 20.) Plaintiffs allege that they were unable to determine whether they had a meritorious claim to benefits because defendants unreasonably obstructed their access to plan documents.

To possess standing under § 1132(c), a plaintiff must be a "participant" or a "beneficiary" under the relevant plan. Section 1132(a)(1) states: "A civil action may be brought – (1) by a participant or beneficiary – (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. In <u>Daniels v. Thomas & Betts Corp.</u> the Third Circuit Court of Appeals interpreted the term "beneficiary" to include those who are "entitled" to plan benefits. 263 F.3d 66, 78 (3d Cir. 2001). The court

---

[5] Defendants concede the sufficiency of plaintiffs' allegation that Alyssa Laughman is a beneficiary with standing. (See Doc. 40 ¶ 16.)

also noted that "it is not necessary that [the purported beneficiary] establish that she had a meritorious claim; it is sufficient if she demonstrates that she had a 'colorable claim that . . . she will prevail in a suit for benefits.'" Id. at 78-79 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989)); see also Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 124 (3d Cir. 2006) ("We have interpreted the colorable claim requirement as a lower burden of persuasion than showing likelihood of success on the merits."). Although plaintiffs acknowledge they are not entitled to benefits under the insurance policy, (see Doc. 37 ¶ 15), they argue that at the time they requested plan documents they demonstrated a "colorable claim" to benefits, see Daniels, 263 F.3d at 78-79. Based upon the facts pled, the court agrees.

When plaintiffs first inquired into the insurance policies held by decedent on August 30, 2006, they had a "reasonable basis" for believing they were entitled to benefits under decedent's insurance policies. In the course of her duties as adminstratrix of decedent's estate, Jean reviewed decedent's paycheck stubs for the period prior to and following his death. (See Doc. 37 ¶ 18.) Laughman observed that premiums for insurance policies were deducted from decedent's paychecks both prior to and following his death. (See id.) These observations supported her reasonable belief that monies were being contributed to pay insurance premiums and, therefore, that the insurance policies were in full force and effect at the time of decedent's death. This, in turn, led her to inquire as to the identities of the beneficiaries under the policies. (See id.)

8

Plaintiffs allege that they wrote to defendants on eleven separate occasions between August 30, 2006 and September 10, 2008, requesting any documents or information regarding decedent's insurance polices and benefits plans through his employer. (See id. ¶ 54.) Plaintiffs also allege that Jean telephoned B&V directly on January 16, 2007 seeking similar information. (See id. ¶ 31.) The written and oral communications plaintiffs sent to defendants were clear, simple, and direct, and put defendants on notice of the insurance documents plaintiffs sought. See Kollman v. Hewitt Assocs., LLC, 487 F.3d 139, 146 (3d Cir. 2007) (explaining that "the touchstone [of a sufficient plan request] is whether the request provides the necessary clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided"). Plaintiffs allege that defendants did not provide a direct answer to their inquires until at least June 2, 2008, which was 642 days after plaintiffs' first written request for insurance documentation.[6] (See Doc. 37 ¶ 57.). Eventually, defendants supplied plaintiffs with information demonstrating that their claim was not valid; however, until plaintiffs' receipt of this information in September 2008, their claim to benefits was plausible and reasonable. (See id. ¶ 50); see also Daniels, 263 F.3d at 79 ("The concept of a colorable claim necessarily encompasses situations in which the requester has a reasonable basis for believing that he or she has a meritorious claim but is in fact

---

[6] Plaintiffs also allege that defendants did not completely fulfill their requests for all insurance plan documents until September 10, 2008, which plaintiffs allege was 742 days after their first written request. (See Doc. 37 ¶ 56.) Plaintiffs concede that in calculating damages under 29 U.S.C. §1132(c)(1)(B), however, that defendants are entitled to a thirty-day grace period for production of plan documents as plan administrators. (See Doc. 37 ¶ 55.)

9

mistaken."). As the Third Circuit explained in Daniels, "Congress intended that [plaintiffs] have access to the documents necessary to determine whether [they] ha[ve] a meritorious claim as well as a colorable one." Daniels, 263 F.3d at 79. Plaintiffs allege that the purpose of their correspondence was to discover precisely the information necessary to determine whether their claim for benefits under decedent's insurance policies had merit.[7] (See Doc. 37 ¶ 19.)

Based upon the facts pled, the court finds that plaintiffs had a colorable claim to benefits when they sent the first written request to defendants on August 30, 2006, and maintained a colorable claim until defendants provided information suggesting otherwise 642 days later. Defendants' motion to dismiss will therefore be denied.

---

[7] Congress intended the penalty provision in § 1132(c) as a tool to encourage plan administrators to provide responsive documents or information to those presenting a valid request for such information. As the First Circuit noted in Vartanian v. Monsanto Co., "[t]he legislative history of ERISA indicated that Congress intended the federal courts to construe the Act's jurisdictional requirement broadly in order to facilitate enforcement of its remedial provision." 14 F.3d 697, 702 (1st Cir. 1994). Congress' intent that individuals such as plaintiffs have access to information necessary to determine the credibility of their claims was the reason they enacted a penalty provision for a plan administrator's failure to provide plan documents. Plaintiffs' purported requests for insurance documents and defendants' allegedly evasive conduct in response thereto falls squarely within the ambit of ERISA's penalty provision.

10

**IV. Conclusion**

For the foregoing reasons, defendant's motion (Doc. 40) will be denied.  An appropriate order follows.

                                            S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge

Dated:      November 18, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALYSSA LAUGHMAN**, a minor, by **ROBERT CAMPBELL**, Esquire, court-appointed guardian ad litem, **JEAN C. LAUGHMAN**, and **TILGHMAN LAUGHMAN**, : : : : : : **Plaintiffs** : v. : : **ACE AMERICAN INSURANCE**, **BLACK & VEATCH CORP.**, **OVERLAND CONTRACTING INC.**, **THE HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**, **THE HARTFORD FINANCIAL SERVICES GROUP, INC.**, and **THE HARTFORD**, : : : : : : : : : **Defendants** : | CIVIL NO. 1:09-CV-0695 (Judge Conner) |

## **ORDER**

AND NOW, this 18th day of November, 2009, upon consideration of defendants' motion (Doc. 40) to dismiss the amended complaint, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED, that:

1. The motion (Doc. 40) to dismiss the amended complaint (Doc. 37) is DENIED.

2. The motions (Docs. 6, 9, 12) to dismiss the complaint (Doc. 1) are DENIED as moot.

3. The report and recommendation (Doc. 32) is REJECTED as moot.

4. The case is remanded to the magistrate judge for further proceedings.

                                                                            S/ Christopher C. Conner
                                                                            CHRISTOPHER C. CONNER
                                                                            United States District Judge