UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALYSSA LAUGHMAN, a minor, by : **CIVIL NO. 1:09-CV-0695**
ROBERT CAMPBELL, ESQUIRE, :
court-appointed guardian : (Judge Conner)
ad litem; JEAN C. LAUGHMAN; :
and TILGHMAN LAUGHMAN, : (Magistrate Judge Smyser)
:
Plaintiffs :
:
v. :
:
ACE AMERICAN INSURANCE; :
BLACK & VEATCH CORP.; OVERLAND :
CONTRACTING INC.; THE HARTFORD :
LIFE AND ACCIDENT INSURANCE :
COMPANY; THE HARTFORD FINANCIAL :
SERVICES GROUP, INC.; and THE :
HARTFORD, :
:
Defendants :

## REPORT AND RECOMMENDATION

I. Background and Procedural History.


        The plaintiffs, Alyssa Laughman, Jean C. Laughman -
individually and as the administrator of the Estate of Joseph
Laughman - and Tilghman Laughman, commenced this action in the
Court of Common Pleas of Adams County, Pennsylvania.  The
complaint named as defendants: Ace American Insurance Co.,
Black & Veatch Corporation, Overland Contracting, Inc., The
Hartford Life and Accident Insurance Company, The Hartford
Financial Services Group, Inc. and The Hartford.

Plaintiff Alyssa Laughman is the daughter of decedent Joseph A. Laughman, and plaintiffs Jean and Tilghman Laughman are the parents of decedent Joseph A. Laughman. The plaintiffs alleged in the complaint that decedent Joseph A. Laughman was a participant in a supplemental life insurance policy and accidental death and dismemberment insurance policy and that they were entitled to benefits under those policies.

On April 15, 2009, defendants The Hartford Life and Accident Insurance Company, The Hartford Financial Services Group, Inc. and The Hartford removed the case to this court.

On August 5, 2009, the plaintiffs filed an amended complaint. Although the caption of the amended complaint continues to list as defendants all of the defendants named in the original complaint, the amended complaint asserts a claim against only Black & Veatch Corporation and Overland Contracting, Inc. Accordingly, the only remaining defendants are Black & Veatch Corporation and Overland Contracting, Inc. The plaintiffs no longer claim that they are entitled to benefits under the policies. Rather, the only claim in the amended complaint is a claim that the defendants violated 29 U.S.C. § 1132(c) by failing to provide the plaintiffs with copies of requested plan documents.

The defendants filed a motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1). By a Memorandum and Order dated November 18, 2009, Judge Conner denied that

motion and remanded the case to the undersigned for further
proceedings.

On December 2, 2009, the defendants filed an answer to
the amended complaint.  Pursuant to the second amended case
management order of February 25, 2010, the discovery period
ended on May 14, 2010.

Currently pending is a motion (doc. 52) for summary
judgment filed by the plaintiffs and a motion (doc. 65) for
summary judgment filed by the defendants.  We address those
motions in this Report and Recommendation.

II.  Summary Judgment Standards.

Summary judgment is appropriate if the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The moving party bears the initial
responsibility of informing the court of the basis for its
motion and identifying those portions of the record which
demonstrate the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With
respect to an issue on which the nonmoving party bears the
burden of proof, the moving party may discharge that burden by
"'showing'-- that is, pointing out to the district court --
that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving

party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III. Discussion.

     The plaintiffs claim that the defendants violated 29
U.S.C. § 1132(c) by failing to provide them with copies of
requested plan documents.

     29 U.S.C.S. § 1024(b)(4) provides that "[t]he
administrator shall, upon written request of any participant or
beneficiary, furnish a copy of the latest updated summary plan
description, and the latest annual report, any terminal report,
the bargaining agreement, trust agreement, contract, or other
instruments under which the plan is established or operated."
29 U.S.C.S. § 1132(c)(1)(B) provides that any administrator
"who fails or refuses to comply with a request for any
information which such administrator is required by this title
to furnish to a participant or beneficiary (unless such failure
or refusal results from matters reasonably beyond the control
of the administrator) by mailing the material requested to the
last known address of the requesting participant or beneficiary
within 30 days after such request may in the court's discretion
be personally liable to such participant or beneficiary in the
amount of up to $100 a day from the date of such failure or
refusal, and the court may in its discretion order such other
relief as it deems proper."  Section 1132(c)(1) further
provides that "each violation described in subparagraph (B)
with respect to any single participant or beneficiary . . .
shall be treated as a separate violation."  By a regulation,

the civil penalty was increased from a maximum of $100 a day to a maximum of $110 a day. 29 C.F.R. § 2575.502c-1.

Because the statutory penalty provision of 29 U.S.C.S. § 1132(c)(1)(B) provides for a monetary penalty against a plan administrator, it is a penal statute. *Kollman v. Hewitt Associates, LLC,* 487 F.3d 139, 144 (3d Cir. 2007). The statutory penalty provision is construed strictly. *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan,* 24 F.3d 1491, 1505 (3d Cir. 1994). A request for documents pursuant to 29 U.S.C.S. § 1024(b)(4) must provide clear notice to the plan administrator of the documents requested. *Kollman, supra,* 487 F.3d at 145. "[T]he touchstone is whether the request provides the necessary clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided." *Id.* at 146.

A. Standing.

The defendants contend that the plaintiffs lack standing. They contend that plaintiffs Jean and Tilghman Laughman lack standing because they were neither participants nor beneficiaries of any of the plans at issue. They also contend that although Alyssa Laughman was designated as the beneficiary of the Hartford Life and ACE AD&D plans, those plans did not go into effect until 22 days after the death of decedent Joseph A. Laughman. The defendants contend, therefore, that none of the plaintiffs were beneficiaries under

7

those plans and that the plaintiffs lack standing.  The
plaintiffs contend that Judge Conner has already decided the
standing issue.

        In the Memorandum and Order of November 18, 2009, Judge
Conner addressed, in connection with the defendants' motion to
dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the defendants'
contention that plaintiffs Jean and Tilghman Laughman lack
standing.  Judge Conner reasoned as follows:

> To possess standing under § 1132(c), a
> plaintiff must be a "participant" or a
> "beneficiary" under the relevant plan.
> Section 1132(a)(1) states: "A civil action may
> be brought - (1) by a participant or
> beneficiary - (A) for the relief provided for
> in subsection (c) of this section, or (B) to
> recover benefits due to him under the terms of
> his plan, to enforce his rights under the
> terms of the plan, or to clarify his rights to
> future benefits under the terms of the plan.
> In Daniels v. Thomas & Betts Corp. the Third
> Circuit Court of Appeals interpreted the term
> "beneficiary" to include those who are
> "entitled" to plan benefits. 263 F.3d 66, 78
> (3d Cir. 2001).  The court also noted that "it
> is not necessary that [the purported
> beneficiary] establish that she had a
> meritorious claim; it is sufficient if she
> demonstrates that she had a 'colorable claim
> that . . . she will prevail in a suit for
> benefits.'" Id. at 78-79 (quoting Firestone
> Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117
> (1989); see also Leuthner v. Blue Cross &
> Blue Shield of Ne.Pa., 454 F.3d 120, 124 (3d
> Cir. 2006)("We have interpreted the colorable
> claim requirement as a lower burden of
> persuasion than showing likelihood of success
> on the merits.").  Although plaintiffs
> acknowledge they are not entitled to benefits
> under the insurance policy, (see Doc. 37 ¶15),
> they argue that at the time they requested
> plan documents they demonstrated a "colorable
> claim" to benefits, see Daniels, 263 F.3d at
> 78-79.  Based upon the facts pled, the court
> agrees.

When plaintiffs first inquired into the insurance policies held by decedent on August 30, 2006, they had a "reasonable basis" for believing they were entitled to benefits under decedent's insurance policies. In the course of her duties as administratrix of decedent's estates, Jean reviewed decedent's paycheck stubs for the period prior to and following his death. (<u>See</u> Doc. 37 ¶ 18.) Laughman observed that premiums for insurance policies were deducted from decedent's paychecks both prior to and following his death. (<u>See</u> <u>id.</u>) These observations supported her reasonable belief that monies were being contributed to pay insurance premiums and, therefore, that the insurance policies were in full force and effect at the time of decedent's death. This, in turn, led her to inquire as to the identities of the beneficiaries under the policies. (<u>See</u> <u>id.</u>)

Plaintiffs allege that they wrote to defendants on eleven separate occasions between August 30, 2006 and September 10, 2008, requesting any documents or information regarding decedent's insurance policies and benefits plans through his employer. (<u>See</u> <u>id.</u> ¶ 54.) Plaintiffs also allege that Jean telephoned B&V directly on January 16, 2007 seeking similar information. (<u>See</u> <u>id.</u> ¶ 31.) The written and oral communications plaintiffs sent to defendants were clear, simple, and direct, and put defendants on notice of the insurance documents plaintiffs sought. <u>See</u> <u>Kollman v. Hewitt Assocs., LLC</u>, 487 F.3d 139, 146 (3d Cir. 2007)(explaining that "the touchstone [of a sufficient plan request] is whether the request provides the necessary clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided"). Plaintiffs allege that defendants did not provide a direct answer to their inquiries until at least June 2, 2008, which was 642 days after plaintiffs' first written request for insurance documentation. (<u>See</u> Doc. 37 ¶57.). Eventually, defendants supplied plaintiffs with information demonstrating that their claim was not valid; however, until plaintiffs' receipt of this information in September 2008, their claim to benefits was plausible and reasonable. (<u>See</u> <u>id.</u> ¶ 50); <u>see</u> <u>also</u> <u>Daniels</u>, 263 F.3d at 79 ("The concept of a colorable claim necessarily encompasses situations in which the requester has a

reasonable basis for believing that he or she
has a meritorious claim but is in fact
mistaken.").  As the Third Circuit explained
in <u>Daniels</u>, "Congress intended that
[plaintiffs] have access to the documents
necessary to determine whether [they] ha[ve] a
meritorious claim as well as a colorable one."
<u>Daniels</u>, 263 F.3d at 79.  Plaintiffs allege
that the purpose of their correspondence was
to discover precisely the information
necessary to determine whether their claim for
benefits under decedent's insurance policies
had merit. (<u>See</u> Doc. 37 ¶ 19.)

> Based on the facts pled, the court finds
that plaintiffs had a colorable claim to
benefits when they sent the first written
requests to defendants on August 30, 2006, and
maintained a colorable claim until defendants
provided information suggesting otherwise 642
days later.  Defendants' motion to dismiss
will therefore be denied.

*Doc. 44* at 7-10 (footnotes omitted).

Judge Conner decided the defendants' motion to dismiss
as a facial attack on standing. *See Doc. 44* at 6.  Thus, he
decided that as pled the plaintiffs had sufficiently alleged
facts to support their standing.  Judge Conner did not finally
decide the standing issue.  Thus, contrary to the plaintiffs'
suggestion, Judge Conner's decision in connection with the
motion to dismiss is not the law of the case with respect to
the standing issue.

Nevertheless, its does not appear that the facts
alleged in the amended complaint that Judge Conner determined
supported standing are in dispute.  There has been no showing
that it is in dispute that: in the course of her duties as
administratrix of decedent's estate, Jean Laughman reviewed

10

decedent's paycheck stubs for the period prior to and following his death; that she observed that premiums for insurance policies were deducted from decedent's paychecks both prior to and following his death; that, based on these observations, she believed monies were being contributed to pay insurance premiums and that the insurance policies were in full force and effect at the time of decedent's death; and that this led her to inquire as to the identities of the beneficiaries under the policies. Given that these facts are not shown to be in dispute and that given these facts Judge Conner concluded that the plaintiffs had a colorable claim to benefits when they sent their requests for information, we will not recommend that the defendants be granted summary judgment on the basis that the plaintiffs lack standing to pursue their claims.

B. The Requests.

The defendants contend that the plaintiffs never made a specific request for documents of the descriptions listed in 29 U.S.C.S. § 1024(b)(4). The defendants contend that, therefore, the plaintiffs did not provide clear notice of the documents that they were seeking and thus that the plaintiffs are not entitled to statutory penalties under 29 U.S.C.S. § 1132(c)(1)(B).[1]

_____

1. The plaintiffs contend that Judge Conner has already determined that their requests provided clear notice of the documents requested and that that determination is the law of the

(continued...)

We agree with the defendants that none of the letters
sent by the plaintiffs provide a basis for imposing statutory
penalties under 29 U.S.C.S. § 1132(c)(1)(B)[2].  We will review
each request seriatim.

     1.  August 30, 2006 Letter.

     On August 30, 2006, plaintiffs' counsel, David L.
Rohde, Esquire, sent a letter to the Human Resources Department

---

[1].  (...continued)
case.  Again, Judge Conner previously decided a Fed.R.Civ.P.
12(b)(1) motion to dismiss raising a facial attack against the
standing of two of the plaintiffs.  We do not construe statements
made by the court in connection with that motion as factual
findings or as law of the case.

[2].  In addition to Section 1024(b)(4), the plaintiffs cite a
regulation promulgated by the Secretary of Labor regarding claims
procedures as supporting their request for statutory penalties.
*See* 29 C.F.R. § 2560.503-1(h)(2)(iii).  That regulation deals with
an appeal of an adverse benefit determination and provides that
"the claims procedure of a plan will not be deemed to provide a
claimant with a reasonable opportunity for a full and fair review
of a claim and adverse benefit determination unless the claims
procedures" *inter alia* "[p]rovide that a claimant shall be
provided, upon request and free of charge, reasonable access to,
and copies of, all documents, records, and other information
relevant to the claimant's claim for benefits." *Id.*  This
regulation is not applicable in this case as this case does not
involve the review of a denial of a claim for benefits.  Moreover,
even if applicable, breach of the requirements of the regulation
can not support an award of a statutory penalty under 29 U.S.C.S.
§ § 1132(c)(1)(B). *Groves v. Modified Retirement Plan*, 803 F.2d
109, 118 (3d Cir. 1986)(holding that statutory penalty may not be
imposed for violation of an agency regulation).

of Overland Contracting, Inc. *Doc. 52-2* at 2. The body of that letter reads:

> I represent the estate of Joseph A. Laughman, deceased. Mr. Laughman died in a motor vehicle accident on June 9, 2006. Mr. Laughman is survived by his parents and his daughter, Alyssa. Mr. Laughman's mother, Jean, has been named Admininstratix of the estate.
>
> I am writing to request your assistance in gathering together the assets of the estate and additional life insurance benefits, which I believe are payable to Mr. Laughman's young daughter, Alyssa.
>
> Mrs. Laughman initially had a conversation with someone in your department. She does not recall the name. I would very much appreciate an opportunity to review the situation with you.
>
> It is my understanding that Mr. Laughman had three separate life insurance policies, which included accidental death benefits. In addition, there are retirement and 401K accounts. Mrs. Laughman has indicated that she has already received his last paycheck and accumulated paid leave.
>
> As an initial approach, I belief a quick telephone conversation should get us moving in the right direction. I will look forward to hearing from someone at your earliest convenience.

*Id.*

Defendant Overland Contracting, Inc. asserts that it has no record of receiving this letter. Assuming *arguendo* that the letter was sent to and received by defendant Overland Contracting, Inc., we nevertheless conclude that the letter does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B). The letter does not explicitly request any documents. To the extent that the letter can be

13

read as implicitly requesting documents, the letter does not provide clear notice of which documents are being requested.

      2. December 4, 2006 Letter.

      On December 4, 2006, Elizabeth A. Jones, Esquire, of plaintiffs' counsel office, sent a letter to Tracey Burton, senior human resources associate, at Black & Veatch Corporation. *Doc. 52-2* at 3-4. The body of that letter reads:

> This office represents the estate of Joseph A. Laughman on behalf of the deceased's parents, Jean C. and Tilman [sic] R. Laughman. I received your telephone message of November 28, 2006 and contacted you the next day; however, I have not heard back from you.
>
> It is my understanding from your telephone message that Mr. Laughman's assets from your company, including life insurance policies, retirement and 401K accounts, have been paid to Mr. Laughman's daughter, Alyssa, through her mother and Guardian, Maria Richards. While Ms. Richards is Alyssa's Guardian, she is not the Trustee of the estate account of Joseph Laughman. My office is trying to correct any errors that were made.
>
> I also understand from you[r] message that Ms. Richards provided you with paperwork showing that she is the Guardian of Alyssa Laughman. I have been unable to find any court filings showing that she is the Trustee or Guardian for Alyssa Laughman and I would appreciate copies of any paperwork that you have in regards to this matter. Any monies on behalf of Joseph Laughman should have been sent to his parents as his mother, Jean C. Laughman, has been named Administratix of the [sic] Mr. Laughman's estate.
>
> At your earliest convenience, please fax over all paperwork in regards to this matter to the fax number listed above. I would like to have this matter clarified as soon as possible so

14

that all monies can be put into the estate
account and a Trust may be set up for Alyssa
Laughman.

If you have any questions or comments, please
do not hesitate to contact me.  I would like
to discuss this matter further with you to
determine how everything can be clarified in
regards to Mr. Laughman's estate.

Please contact me upon receipt of this letter.
Thank you for you courtesy and cooperation
with regards to his matter.

*Id.*

This letter does request documents.  However, the
documents requested are referred to as "paperwork that you have
in regards to this matter" and "all paperwork in regards to
this matter." *Doc. 52-2* at 3-4.  The "matter" in the requests
appears to be the appointment of Maria Richard as guardian of
Alyssa Laughman.  Documents relating to the appointment of
Maria Richards as guardian of Alyssa Laughman are not the type
of documents that a plan administrator is required to furnish
pursuant to 29 U.S.C.S. § 1024(b)(4).  That statute, as
set forth above, requires the plan administrator to provide
upon request a copy of the updated summary plan description,
the latest annual report, any terminal report, the bargaining
agreement, trust agreement, contract, or other instruments
under which the plan is established or operated.  The letter
does not provide clear notice of a request for documents under
§ 1024(b)(4).  Accordingly, the failure to provide § 1024(b)(4)
documents in response to the letter does not support the award
of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

3. December 6, 2006 Letter.

Attorney Jones sent another letter to Burton on December 6, 2006. *Doc. 52-2* at 5-6. The body of this letter reads:

> This office represents Jean C. Laughman, the Administrator of the estate of Joseph A. Laughman, who also acts as the Personal Representative for the estate of Joseph A. Laughman. Mr. Laughman was an employee of Overland Contracting, Inc., which is owned by the Black & Veatch Corporation. It is my understanding that there are currently three life insurance policies held by Black & Veatch Corporation that should be distributed to the estate of Joseph A. Laughman. Mr. Laughman died in a motor vehicle accident on June 9, 2006 and he is survived by his parents and his daughter, Alyssa.

> My office began contacting you in August 2006 to request your assistance in gathering together the assets of the estate and additional life insurance benefits. Since that time, there has been some misunderstandings. It has come to my attention that funds from Mr. Laughman's life insurance policies, which belong to Mr. Laughman's estate and are payable to the estate of Joseph Laughman or his daughter, Alyssa, have been sent directly to Maria E. Richards. Please let me be clear - my office represents the estate of Joseph A. Laughman. Any and all monies that should be paid upon the death of Mr. Laughman should have been forwarded to the Administrator of the estate of Joseph A. Laughman, who is my client, Jean C. Laughman. I spoke with you on December 5, 2006 in regards to this misunderstanding. You informed me that you needed to discuss the matter with your legal department. I am writing to demand that you do nothing further with the assets in regards to Joseph A. Laughman without contacting my office.

> Any life insurance benefits should not have been sent directly to Maria E. Richards. While her daughter, Alyssa Laughman, is the

16

> beneficiary, an estate account has been opened
> on behalf of Joseph A. Laughman that is the
> proper repository for all of his assets.
> Please forward me any paperwork that you have
> received from Maria E. Richards in regards to
> this matter. Please also forward me copies of
> any documents sent to Maria E. Richards,
> including copies of checks that were made
> payable to Maria E. Richards.
>
> Again, my office represents the estate of
> Joseph A. Laughman, deceased. Anything having
> to do with Mr. Laughman's life insurance
> benefits should be discussed with someone from
> my office before any action is taken. I would
> like to sort this matter out as soon as
> possible. Please either fax or mail any and
> all documents that you possess in regards to
> this matter.
>
> If you have any questions or comments, please
> do not hesitate to contact me. Thank you for
> your anticipated cooperation with regards to
> this matter.

*Id.*

This letter requests documents. It requests documents to and from Maria E. Richards and "any and all documents that you possess in regards to this matter." *Doc. 52-2* at 5-6. Again, however, this letter does not provide clear notice of a request for documents required to be furnished under § 1024(b)(4). Accordingly, the failure to provide § 1024(b)(4) documents in response to the letter does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

4. December 13, 2006 Letter.

On December 13, 2006, Attorney Rohde faxed a letter to Burton, which reads as follows:

17

I represent the Estate of Joseph A. Laughman.
I write to request your assistance with regard
to a relatively simple issue.  Wetzel Funeral
Home has been in contact with me regarding
their invoice for Joseph's funeral.  They are
demanding payment.

Jean Laughman, Joseph's mother and
administratrix of his estate has advised me
that Joseph's funeral expense is covered by
your company, either as a direct employee
benefit or through insurance.  Is this true?
Wetzel is filing a lien against the estate.
Obviously, this is a concern.  Please advise.

There are also several other issues that we
need to work through.  I received your faxed
letter of December 7, 2006 and will be happy
to correspond with whomever.  For now please
advise if you will pay the funeral bill.

If you have any questions or comments, please
do not hesitate to contact me.  Thank you for
your anticipated cooperation with this matter.

*Doc. 52-2* at 8.

This letter does not request any documents.
Accordingly, the failure to provide § 1024(b)(4) documents in
response to the letter does not support the award of a
statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

5. October 3, 2007 Letter.

On October 3, 2007, Attorney Gregory S. Shields, of
plaintiffs' counsel's office, sent a letter to Tracey Burton.
*Doc. 52-2* at 11.  The body of this letter reads:

Our office continues to represent the
Estate of Joseph A. Laughman.  You have
already received notice of our representation
in this regard.  I am writing in an attempt to
obtain documents from your offices regarding
Mr. Laughman's employment at Overland

18

Contracting, Inc. and its parent company,
Black & Veatch Corp.

In this regard, please consider this a
formal request for any and all documentation
in the possession of those companies regarding
Joseph A. Laughman.  These documents should
include, but not be limited to:
•  Any application for insurance benefits;
•  Any modifications to Mr. Laughman's
insurance policies;
•Any correspondence to or from the
Hartford Insurance Company;
•Any correspondence to or from the Zurich
Insurance Company;
•Any correspondence to or from the ACE
American Insurance Company;
•Any correspondence to or from any other
insurance company;
•Any correspondence to or from the Wetzel
Funeral Home;
•Any correspondence to or from Maria
Richards or her attorney(s); and
•Any correspondence to or from Mr.
Laughman himself.

If there is a fee for the reproduction of
these documents, please forward an invoice to
my attention.  I thank you for your immediate
attention.  If you require any additional
information, please feel free to give me a
call.

*Id.*


This letter is a request for documents.  It requests

any and all documentation in the possession of Overland

Contracting, Inc. and Black & Veatch Corp. regarding Joseph A.

Laughman.  Such a general request does not provide clear notice

that the writer is seeking any of the documents required to be

provided by § 1024(b)(4) which are the summary plan

description, the latest annual report, any terminal report, the

bargaining agreement, trust agreement, contract, or other

instruments under which the plan is established or operated.

19

This letter, however, then lists specific categories of documents being sought. One of the categories of documents - "[a]ny modifications to Mr. Laughman's insurance policies" - can reasonably be construed to fall within the category of documents identified in § 1024(b)(4) as "instruments under which the plan is established or operated." To that extent, the letter provides clear notice of a request for documents under § 1024(b)(4).

The defendants contend that there were no modifications to the insurance policies. *See Doc. 65-2 (Decl. of Beverly S. Albrecht)* at ¶27. The plaintiffs have not provided any evidence that there were any modifications to the insurance policies. Thus, although the letter of October 3, 2007 provides clear notice of a request for documents under § 1024(b)(4), the plaintiff has not established that any of the requested documents existed. Accordingly, the failure to provide § 1024(b)(4) documents in response to the letter does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

6. October 25, 2007 Letter.

On October 25, 2007, Attorney Shields sent a letter to Carol S. Clark, Esquire, of Black & Veatch Corporation. *Doc. 52-2* at 13. The body of that letter reads:

> I am in receipt of your October 12, 2007
> letter requesting documentation allowing you

20

to communicate with this office.  In this
regard, I have attached the Certificate of
Grant of Letter establishing Jean C. Laughman
as the Administrator of the estate.  Secondly,
I have enclosed an authorization from the
Administrator of the estate, Mrs. Laughman.
Finally, I have attached a Court Order
permitting this office to obtain the
information we have requested.

As per our telephone conversation, I trust
these will be sufficient to allow you to
communicate with this office.  However, if you
need any further information, please feel free
to give me a call.

Thank you for your attention.

*Id.*

This letter does not specifically request documents.
This letter, however, can reasonably be seen to refer to the
documents requested in the October 3, 2007 letter.  But, as we
have already indicated, the October 3, 2007 letter does not
support the award of a statutory penalty under 29 U.S.C.S.
§ 1132(c)(1)(B).  Accordingly, the failure to provide
§ 1024(b)(4) documents in response to the letter does not
support the award of a statutory penalty under 29 U.S.C.S.
§ 1132(c)(1)(B).


        7.  November 30, 2007 Letter.


        On November 30, 2007, Attorney Rohde sent a letter to
Beverly Albrecht of Black & Veatch Corporation. *Doc. 52-2 at
19.*  The body of that letter reads as follows:

I write in response to the November 21, 2007
letter from Carol S. Clark, Esquire responding
to our earlier communication.

21

I would very much appreciate receiving a copy
of the paperwork with Wetzel Funeral Home as
well as a copy of the letter to Ms. Richards.
I am in possession of the Zurich Insurance
Company letter addressed to my associate.

The real purpose of our request is to verify
what insurance policies existed in the name of
Joseph Laughman on the date of his untimely
death.  Mr. Laughman had advised his family of
several changes in insurance coverage.  It is
my intention to obtain any and all
applications regarding Mr. Laughman's life
insurance program created in 2006.

I trust this will assist you in responding to
our request for information.  If you need to
speak with me, please give me a call.  Have a
happy holiday season.

*Id.*

This letter requests copies of paperwork with the
Wetzel Funeral Home and a copy of a letter to Ms. Richards.
Those documents, however, are not documents that are required
to be furnished under § 1024(b)(4).  This letter can also be
reasonably construed as a request for any and all applications
regarding Mr. Laughman's life insurance program created in
2006.  Again, however, this request does not provide clear
notice that the writer is seeking any of the documents required
to be provided by § 1024(b)(4) which are the summary plan
description, the latest annual report, any terminal report, the
bargaining agreement, trust agreement, contract, or other
instruments under which the plan is established or operated.[3]

---

[3]  The phrase "other instruments under which the plan is
established or operated" has been construed narrowly to apply only
to formal documents that establish or govern the plan. *See e.g.
Brown v. American Life Holdings,Inc.*, 190 F.3d 856, 861 (8th Cir.
(continued...)

Accordingly, the failure to provide § 1024(b)(4) documents in response to the letter does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

        8. January 23, 2008 Letter.

        On January 23, 2008, Attorney Rohde sent another letter to Albrecht. *Doc. 52-2 at 25.* The body of that letter reads as follows:

        I write in response to your December 11, 2007
        letter sent providing some of the paperwork
        our office has requested in the above-

---

3.  (...continued)
1999)(holding that phrase "other instruments under which the plan is established or operated" means instruments which govern the plan rather than those which simply evidence the plan's operation); *Ames v. American Nat. Can Co.*, 170 F.3d 751, 758 (7th Cir. 1999)(rejecting interpretation of phrase "other instruments under which the plan is established or operated" as applying to all documents that provide information about a plan and its benefits). "This is not to say, of course, that companies have a permanent privilege against disclosing other documents." *Ames, supra,* 170 F.3d at 759. "It means only that the affirmative obligation to disclose materials under ERISA, punishable by penalties, extends only to a defined set of documents." *Id.* The plaintiffs cite to *Maiuro v. Federal Express Corp.,* 843 F.Supp. 935 (D.N.J. 1994), for the proposition that a request is a request for plan documents under § 1024(b)(4) if the request 1) is of such a character that it would directly assist the requesting party in determining his or her rights under the plan; 2) will directly assist the requesting party in determining where he or she stands with respect to the plan; or 3) will directly assist the requesting party in determining the extent of his or her interest in the plan. *Maiuro* was a pension plan case, and additional disclosure requirements in addition to § 1024(b)(4) are applicable to pension plans. Accordingly, we conclude that *Maiuro* is not persuasive authority in this case.

referenced matter.  Thank you for providing these documents.

I am, however, still in need of additional documentation that we have previously requested.  Please refer to my Associate's October 3, 2007 letter attached.

In addition to the documents requested in that correspondence, I also require a copy of Joe Laughman's personnel file in its entirety including, but not limited to, any documents dealing with any insurance policy whatever. To date, I have only received paperwork from the Wetzel Funeral Home and one letter addressed to Ms. Richards from former employee, Tracey Burton.

At your earliest convenience, please provide me with these requested documents.  My office has previously provided you with an authorization permitting you to provide these documents.

If you have any questions or concerns, please feel free to give me a call.

*Id.*

This letter again requests the documents requested in the letter of October 3, 2007.  But, as we have already indicated, the October 3, 2007 letter does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B). This letter also requests a copy of Joseph Laughman's personnel file including any documents dealing with any insurance policy. This request, however, does not provide clear notice that any of the specific documents listed in § 1024(b)(4) are being required.  Moreover, even assuming *arguendo* that the request for the personnel file could be seen a clear request for documents listed in § 1024(b)(4), the plaintiffs have not presented any evidence that the personnel file actually contained any of the documents listed in § 1024(b)(4), which

24

again are the summary plan description, the latest annual
report, any terminal report, the bargaining agreement, trust
agreement, contract, or other instruments under which the plan
is established or operated.  Accordingly, the failure to
provide § 1024(b)(4) documents in response to the letter does
not support the award of a statutory penalty under 29 U.S.C.S.
§ 1132(c)(1)(B).


    9.  May 14, 2008 Letter.


    On May 14, 2008, Attorney Nicholas J. Wachinski, of
plaintiffs' counsel's office, sent a letter to Beverly
Albrecht, Carol S. Clark and Andrea Thomas Ramsey, all of Black
& Veatch Corporation. *Doc. 52-2* at 28-29.  The body of that
letter reads:

> I write in reference to the Estate of Joseph
> Laughman.  As you are undoubtedly aware, Mr.
> Laughman was killed in an untimely car
> accident and my office has been retained to
> determine his assets.  Your offices have
> routinely avoided specific requests for the
> entirety of Mr. Laughman's personnel file.
> Please refer to Mr. Rohde's letter of January
> 23, 2008 attached hereto.
>
> In order for my office to proceed in
> completing the administration of Mr.
> Laughman's estate it is necessary to identify
> the details of those insurance polices that
> existed at the time of his death.  We are
> aware of his policy with Zurich Insurance
> Company.  However, at the time of his demise,
> Mr. Laughman held additional policies which
> were purchased by or through Black & Veatch.
> Accordingly, we require the full contents of
> Mr. Laughman's file so we may determine the
> full extent of proceeds to be paid into his
> estate.

> To help speed along the process, I have
> enclosed copies of all relevant correspondence
> on this issue, including a letter from Ms.
> Clark dated November 21, 2007 which
> acknowledges receipt of a Court Order and
> Administrator's Authorization for the release
> of the requested documents.
>
> Kindly remit the requested employee file to my
> office within seven (7) business days of
> receipt of this letter or I will be forced to
> name your company in a cause of action. It is
> my belief that your continued delays and
> partial responses constitute Tortious
> Interference with a Contractual Relationship
> pursuant to Pennsylvania law. You inaction
> continues to create needless complication for
> Mr. Laughman's daughter and family in an
> already painful process.
>
> Additionally, be advised in the event my
> office receives no communication or
> correspondence from either of you regarding
> this matter at close of business (5 p.m.
> Eastern Standard Time) June 1, 2008, we will
> be left with no alternative but to institute
> the above mentioned cause of action.
> Unfortunately, your lack of cooperation has
> placed us in a position where we are no longer
> able to suffer further delays or partial
> responses to our request.
>
> If you have any questions or concerns, please
> feel free to contact me directly.

*Id.*

This letter is another request for the personnel file of Joseph Laughman. For the reasons stated in connection with the letter of January 23, 2008, the failure to provide § 1024(b)(4) documents in response to the letter does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

10.  May 22, 2008 Letter.


On May 22, 2008, Attorney Wachinski sent an email to Andrea Ramsey.  *Doc. 52-2* at 30.  The body of that email reads:

> I recently joined the office and have been asked to continue with the administration of this matter.  I have completely reviewed all correspondence and document[s] that have been exchanged between Black & Veatch and my office.  To date, it appears that the same few documents have been exchanged.  These documents are funeral bills, a letter directing my office to take issue with Zurich Insurance, additional letters from my office to your company and finally some documents involving the payment of the $150,000 life insurance policy to Ms. Maria Richards.
>
> Due to the lack of cooperation that my office continually comes into contact with, I forwarded a letter to your office demanding the entirety of Mr. Laughman's employment file.  To date, I have received no word on the status of this production.  You were copied as a recipient of that correspondence.  Mr. Laughman's employment file will contain the necessary documentation regarding any and all life, health or other insurance coverage which your company provided to the decedent.  Furthermore, it will contain documents such as Mr. Laughman's earnings capacity and his general work ethic which will be invaluable to our resolution of matters ancillary to the estate in which Black & Veatch has no direct involvement.
>
> This is my second request for this information or in the alternative for you to contact me immediately.  I hope that we may come to an amicable and timely resolution of this issue. I will await your response anxiously.

*Id.*


This email is another request for the personnel file of Joseph Laughman.  For the reasons stated in connection with the letter of January 23, 2008, the failure to provide

§ 1024(b)(4) documents in response to the request does not support the award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B).

Given our conclusion that none of the failures to provide § 1024(b)(4) documents in response plaintiffs' letters or emails support an award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B), it follows that the plaintiffs' motion for summary judgment should be denied and that the defendants' motion for summary judgment should be granted.

Given our conclusion that none of the failures to provide § 1024(b)(4) documents in response to the plaintiffs' requests support an award of a statutory penalty under 29 U.S.C.S. § 1132(c)(1)(B), we need not address the defendants' other arguments for why they are entitled to summary judgment.

The defendants request leave to file an application for attorney's fees and costs under 29 U.S.C.S. § 1132(g)(1), which provides that "[i]n any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Any applications for attorney's fees and costs should be made in accordance with Fed.R.Civ.P. 54 and Local Rules 54.3 through 54.5.

IV.  Recommendations.


　　　　Based on the foregoing, it is recommended that the plaintiffs' motion (doc. 52) for summary judgment be denied and that the defendants' motion (doc. 65) for summary judgment be granted.


　　　　　　　　　　　　　　　　　　_**/s/ J. Andrew Smyser**_
　　　　　　　　　　　　　　　　　　J. Andrew Smyser
　　　　　　　　　　　　　　　　　　Magistrate Judge


Dated:  July 21, 2010.